United States District Court
Southern District of Texas
**ENTERED**
August 11, 2023
Nathan Ochsner, Clerk

**SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BEVERLY FAZZOLARI, | § | |
| *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-2164 |
| | § | |
| OFFICER JASMINE SELLE, | § | |
| *et al.*, | § | |
| | § | |
| **Defendants.** | | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the Court[1] are Defendants City of Houston, Officer Jasmine Selle, Officer Lazaro Maldanardo, and Officer Kevin Smith's Motions for Summary Judgment (Dkt. Nos. 46, 48, 50, 52). Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the Motions for Summary Judgment be **GRANTED.**

**I.      BACKGROUND**

Beverly Fazzolari ("Plaintiff") alleges that on June 28, 2019, Officers Selle, Smith, and Maldanardo shot and killed Carmine Guiseppe Fazzolari ("Decedent") while acting in their official capacity and within the scope of their employment. (Dkt. No. 18 at 2–3.) She asserts that this occurred "without provocation or justification." (*Id.* at 3.) Defendants contend that these conclusory pleadings leave out necessary facts that led up to the shooting, as documented in

---

[1] On May 3, 2023, the District Judge referred the entire case to the undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 70.)

exhibits including affidavits, body camera footage, third-party witness testimony, and Decedent's video recording. (Dkt. Nos. 46 at ¶¶ 4–5; 48 at ¶¶ 4–5; 50 at ¶¶ 4–5; 52 at ¶¶ 4–5.)

Defendants explain that Officers Christopher Dulin and Taylor Peacock attempted to pull Decedent over for a traffic stop but Decedent fled in his vehicle. (Dkt. Nos. 46 at ¶¶ 6–7; 48 at ¶¶ 6–7; 50 at ¶¶ 6–7; 52 at ¶¶ 6–7.) These officers lost sight of Decedent and issued a police radio transmission giving the vehicle's description. (Dkt. Nos. 46 at ¶ 6; 48 at ¶ 6; 50 at ¶ 6; 52 at ¶ 6.) Officer Selle responded to the broadcast and found Decedent's vehicle parked on the side of the road. (Dkt. Nos. 46 at ¶ 6; 48 at ¶ 6; 50 at ¶ 6; 52 at ¶ 6.) Officers Maldanardo and Smith quickly joined her. (Dkt. Nos. 46 at ¶ 6; 48 at ¶ 6; 50 at ¶ 6; 52 at ¶ 6.) As the three officers approached the vehicle, Decedent exited it holding a pistol. (Dkt. Nos. 46 at ¶ 7; 48 at ¶ 7; 50 at ¶ 7; 52 at ¶ 7.) The Officers ordered Decedent to show his hands, to which Decedent responded, "No." (Dkt. Nos. 46 at ¶ 7; 48 at ¶ 7; 50 at ¶ 7; 52 at ¶ 7.) He then aimed his pistol at Officer Selle and shot her in the arm. (Dkt. Nos. 46 at ¶ 7; 48 at ¶ 7; 50 at ¶ 7; 52 at ¶ 7.) The three officers returned fire, killing Decedent. (Dkt. Nos. 46 at ¶ 7; 48 at ¶ 7; 50 at ¶ 7; 52 at ¶ 7.)

On June 28, 2021, Plaintiff, describing herself as "personal representative" of the Decedent's estate, filed suit in state court against Officers Selle, Smith, Maldanardo, and Israel Maldonado; the Houston Police Department; and the City of Houston ("Houston"). (Dkt. No. 1-1 at 1.) Houston timely removed this case to federal court on July 2, 2021. (Dkt. No. 1.) In Plaintiff's Second Amended Complaint ("SAC"), she dismissed Officer Maldonado and the Houston Police Department. (Dkt. No. 18.) In the SAC Plaintiff asserts Fourth, Eighth, and Fourteenth Amendment violations, and claims a right to recover under Texas Survival and Wrongful Death Statutes. (*Id.*) On August 12, 2021, Houston filed a Motion to Dismiss which Judge Hanen denied

without prejudice to allow Plaintiff more time for discovery. (Dkt. Nos. 20, 30.) Each remaining Defendant then moved for summary judgment on February 21, 2023. (Dkt. Nos. 46, 48, 50, 52.)

## II.   LEGAL STANDARDS FOR SUMMARY JUDGMENT

### A.   Summary Judgment

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Coastal Agric. Supply, Inc.*, 759 F.3d at 505.

In reviewing a motion for summary judgment, the court may not weigh the evidence or make any credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996). The court must make reasonable factual inferences in favor of the nonmoving party without accepting "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient

to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) ("[The nonmoving party's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird*, 2020 WL 208815, at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

### B.  Section 1983

Section 1983 provides a federal cause of action based on the deprivation of a person's rights secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *see Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotations omitted). To state a claim against individuals under § 1983, a plaintiff must allege a violation of a federal constitutional or statutory right and demonstrate that the alleged violation was committed by a person acting under color of law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). To state a claim against a local government under § 1983, a plaintiff must allege that "an official policy or custom of the [local government] was a cause in fact of the deprivation of rights inflicted." *Id.* (quotations omitted). Further, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

### III.    PLAINTIFF HAS NO RIGHT TO RECOVERY

Defendants assert that Plaintiff does not have capacity to sue as Decedent's representative or personal standing under Wrongful Death or Survival Statutes. (Dkt. Nos. 46 at ¶¶ 41–44; 48 at

¶¶ 43–46; 50 at ¶¶ 43–46; 52 at ¶¶ 43–46.) "[A] party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004). "Texas's wrongful-death statute provides, 'A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default.'" *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208 (5th Cir. 2016) (citing Tex. Civ. Prac. & Rem. Code § 71.002(b)). "An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." *Id.* (quoting § 71.004(b)). "Texas provides for survival actions: 'A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.'" *Id.* (quoting § 71.021(b)).

As Defendants rightly point out, Plaintiff does not provide any proof that she was appointed to be the Decedent's estate administrator or representative. (Dkt. Nos. 46 at ¶ 42; 48 at ¶ 44; 50 at ¶ 44; 52 at ¶ 44.) Even more surprisingly, she does not explain if or how she is related to the Decedent. Without these assertions, Plaintiff cannot have capacity to represent the estate or individual standing. Merely possessing the same surname as the Decedent is not sufficient.

Plaintiff does not attempt to refute this argument in any of her responses. (Dkt. Nos. 64–67.) "When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned." *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983)). Thus, Plaintiff has abandoned all claims, as they are brought either on the behalf of

the estate or herself.  Even so, the Court will briefly discuss how Plaintiff's other claims are without merit.

## IV.    CLAIMS AGAINST HOUSTON

Plaintiff first asserted her claim against Houston under theories of vicarious liability and negligence. (Dkt. No. 18 at 7.) In responding to Houston's Motion for Summary Judgment, Plaintiff abandoned these theories and now asserts a *Monell* policy claim. (Dkt. No. 65 at 6–7.) Houston argues that despite this change in argument, Plaintiff still cannot establish municipal liability due to a lack of evidence of any municipal policy, custom or practice; a policymaker; or a constitutional violation. (Dkt. No. 68 at ¶¶ 5–16.) The Court agrees with Houston.

A municipality cannot be vicariously liable for the actions of its employees or agents and liability may not be imposed for "mere negligence." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978*)*; *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality can, however, be liable for constitutional violations resulting from its own official policies and customs. *Monell*, 436 U.S. at 690–91. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To state a *Monell* claim, a plaintiff must allege: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quotations omitted). "[E]very *Monell* claim requires an underlying constitutional violation." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017).

Even if Plaintiff had not abandoned her vicarious liability and negligence theories, they would fail as a matter of law under *Monell*, as described above. *Monell*, 436 U.S. at 691. Plaintiff's

*Monell* policy claim also fails for several reasons. First, and most importantly, there is no underlying constitutional violation, as explained below, and thus there can be no custom or policy associated with such a violation. *See, e.g.*, *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (affirming dismissal of *Monell* claim because plaintiff failed to plausibly allege an underlying constitutional violation); *Cano v. Vickery*, No. CV H-16-392, 2018 WL 4567169, at *7 (S.D. Tex. Sept. 24, 2018) (granting city's motion for summary judgment where constitutional claims against deputy defendants failed as a matter of law so there was no *Monell* liability).

Second, Plaintiff does not sufficiently plead a policy or custom. Plaintiff broadly alleges that the mayor, city council, and chief of police established and/or approved written policies and training programs governing the conduct of Houston Police Department officers and these policies "were the moving force behind and caused Decedent Fazzolari's injuries." (Dkt. No. 65 at 6–7.) Plaintiff further argues Houston, through the Mayor "and/or other policymakers," had knowledge of "unconstitutional patterns and practices" and "made a deliberate and/or conscious decision to disregard the known risk of harm." (*Id.* at 6.) Not only are these statements extremely broad, but Plaintiff also does not point to other incidents other than the one at hand which would constitute a pattern or practice. (*Id.*) These conclusory pleadings are insufficient to raise a genuine issue of material fact. *See Skinner v. Gragg*, No. CV 14-01412, 2015 WL 12966224, at *9 (S.D. Tex. Aug. 13, 2015) (granting county's motion for summary judgment on *Monell* claims where plaintiffs did not allege any specific county practices that fostered unconstitutional conduct), *aff'd*, 650 F. App'x 214 (5th Cir. 2016); *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (dismissing *Monell* policy claim where Plaintiff failed "to allege a pattern of similar violations, let alone [the city's] notice of such a pattern, except in wholly conclusory terms"); *Kimbriel v. City of Greenville, Miss.*, 647 F. App'x 353, 357 (5th Cir. 2016) (deeming *Monell* policy claim abandoned where Plaintiff's

"bald assertions [did] not even come close to meeting the rigorous standards for making a municipal liability claim"); *see also Pena*, 879 F.3d at 622–23 & n.14 (indicating two other incidents of similar conduct would be insufficient to state a *Monell* claim and finding plaintiffs failed to allege actual or constructive knowledge of any policymaker).

Therefore, summary judgment should be granted regarding Plaintiff's claims against Houston due to no underlying constitutional violation and Plaintiff's failure to demonstrate an official policy promulgated by the municipal policymaker.

## V.    CLAIMS AGAINST OFFICER DEFENDANTS

Plaintiff alleges Officer Defendants violated Decedent's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. Officer Defendants, however, invoke qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability," including under § 1983, "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is intended as immunity from suit and not just from liability, application of the defense should be decided at the earliest possible stage of the litigation. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate its inapplicability. *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022); *see Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020).

To defeat qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735

(2011) (quotations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [officer] that his conduct was unlawful in the situation he confronted." *Hicks v. LeBlanc*, 832 F. App'x 836, 840 (5th Cir. 2020) (quotations omitted). A plaintiff may show a right is clearly established either by identifying case law "in which an officer acting under similar circumstances was held to violate the Constitution" or by demonstrating "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quotations and alterations omitted).

The Court will address each alleged constitutional violation in turn. In doing so, the Court finds that Plaintiff's allegations are insufficient to find that the officers violated any constitutional rights and therefore the Court need not address whether the rights were clearly established law.

### A. Eighth Amendment

Defendants correctly assert that the Eighth Amendment's protections are inapplicable to Decedent. (Dkt. Nos. 46 at ¶¶ 18–19; 48 at ¶¶ 17–18; 50 at ¶¶ 17–18; 52 at ¶¶ 17–18.) "The Eighth Amendment applies only to convicted prisoners." *Rogge v. City of Richmond*, *Tex.*, 995 F. Supp. 2d 657, 666 (S.D. Tex. 2014) (citing *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Carlton v. Fearneyhough*, No. 07-10676, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008) (affirming this principle in an excessive force case). Here, Plaintiff was never a prisoner, but instead was fleeing from police. Thus, as a matter of law the Eighth Amendment cannot be applicable to this case. Further, Plaintiff abandoned this claim in her responses.

### B. Fourteenth Amendment

Plaintiff asserts excessive force claims in violation of the Fourth Amendment's protection against unreasonable seizures and the Fourteenth Amendment's prohibition against deprivation of life, liberty, or property without due process of law. (Dkt. No. 18 at 3–5.) However, Defendants correctly explain that only the Fourth Amendment, and not the Fourteenth Amendment, applies to excessive force claims. (Dkt. Nos. 46 at ¶ 20; 48 at ¶ 19; 50 at ¶ 19; 52 at ¶ 19.)

The Supreme Court held "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Further, in responding Plaintiff states that the Fourth Amendment's reasonableness standard governs excessive force claims and makes no defense or mention of the Fourteenth Amendment claim. (Dkt. Nos. 64 at 4; 65 at 4; 66 at 4.) Thus, not only does the Fourteenth Amendment claim fail as a matter of law, but Plaintiff has also abandoned it.

### C.  Fourth Amendment

The Fourth Amendment protects individuals from excessive force during arrest. *Graham*, 490 U.S. at 394–95. To state a Fourth Amendment excessive force claim, a plaintiff must plausibly allege: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2017 WL 3842137, at *8 (W.D. Tex. Sept. 1, 2017) (quotations omitted). "The second and third elements collapse into a single objective-reasonableness inquiry [that considers the following] factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Pena*, 879 F.3d at 619 (quotations omitted). This inquiry

is based on the totality of the circumstances at the time of events and must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Plaintiff does not dispute the following facts that Defendants highlight. First, Decedent fled from officers, which is a felony offense. (Dkt. Nos. 46 at ¶ 22; 48 at ¶ 21; 50 at ¶ 21; 52 at ¶ 21.) He not only fled by vehicle but also refused to comply with officers' verbal orders. (*Id.*) He then proceeded to aim his weapon and fire at Officer Selle, injuring her. (*Id.*) "An officer's use of deadly force is justified when the officer reasonably perceives an immediate threat of serious bodily harm or death to themselves or to others." *Collie v. Barron*, 747 F. App'x 950, 953 (5th Cir. 2018). Further, the Fifth Circuit holds "that when officers believe that they are 'confronting an unpredictable man armed with a dangerous weapon,' they 'may use deadly force . . . without violating the Fourth Amendment.'" *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 288 (5th Cir. 2020) (quoting *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019)).

Here, the officers reasonably perceived an immediate threat of serious bodily harm when Decedent defied officers' orders, aimed his gun at the officers, and then proceeded to shoot Officer Selle. The Fifth Circuit has routinely found "an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (collecting cases); *see also Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991) (finding officer defendants entitled to summary judgment where officers killed defendant after a high-speed chase and decedent defied officers' orders by reaching below their line of site). Further, the Fifth Circuit has "never required officers to wait until a defendant turns towards them, with weapon in hand,

before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016), *as revised* (June 16, 2016). In Decedent's case, the officers were not merely in fear of Decedent reaching for a gun, but saw Decedent aiming at them and then shoot Officer Selle. Therefore, shooting Decedent was not an excessive use of force.

Instead of arguing the initial shooting was unreasonable, Plaintiff focuses on the events after Decedent hit the ground. Plaintiff asserts excessive force occurred when officers continued shooting 15 to 20 or more rounds of gunfire after Decedent had already hit the ground. (Dkt. No. 67 at 5.) The Court will address each officer's actions in turn.

### 1. Officer Selle

After Decedent pointed his weapon at Officer Selle and she heard a "pop," Officer Selle feared for her life and discharged all rounds in her firearm. (Dkt. No. 46 at ¶ 8.) She observed that Decedent continued moving after hitting the ground. (*Id.*) She reloaded her weapon with another magazine but did not discharge any more rounds after reassessing the situation and observing that Decedent was no longer moving and had a gunshot wound to the head. (*Id.*) As she was lowering her own weapon, she realized there was blood running down her arm and that she had been shot by Decedent. (*Id.*) She radioed "officer hit" and Officer Smith administered her first aid. (*Id.*)

In *Plumhoff*, the Supreme Court held that officers firing a total of 15 shots was not an excessive use of force. *Plumhoff v. Rickard*, 572 U.S. 765, 777–78 (2014). The Court explained that "[i]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Id.* at 777. The Court further noted that officers are trained to keep shooting until the threat has subsided. *Id.* Here, as explained above, the initial act of shooting was justified. Additionally, just as in *Plumhoff*, Officer Selle only fired one series of shots and she took the time to reassess the situation

before firing a second series. *Id.* Moreover, "'[w]e do not judge the reasonableness of the officers' use of force from the safety of our chambers or 'with the 20/20 vision of hindsight' but rather 'from the perspective of a reasonable officer on the scene.'" *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). Therefore, as Officer Selle was justified in initially shooting, believed Decedent to still be moving, and only fired one series of shots, her use of force was not excessive.

### 2. Officer Maldanardo

Once Officer Maldanardo exited his vehicle, he told Decedent to raise his hands. (Dkt. No. 50 at ¶ 8.) Decedent did not comply, responded "No," and moved towards Officer Selle. (*Id.*) Officer Maldanardo saw that Decedent was holding a gun and warned the other officers. (*Id.*) As he was repeating this, he saw Decedent raise his gun in Officer Selle's direction. (*Id.*) Officer Maldanardo fired his weapon as he feared Decedent would shoot Officer Selle. (*Id.*) He then observed Decedent "get on the ground" and make movements towards Officer Selle. (*Id.*) He fired again because he did not see Decedent drop his weapon and issued more verbal orders to Decedent. (*Id.*) Once Decedent stopped moving, he did not continue shooting. (*Id.*) He was unsure whether Decedent would shoot again, despite his lack of movement, so he retrieved his rifle and provided cover while Office Smith rendered first aid to Officer Selle but did not fire it. (*Id.*)

Maldanardo's first shot is not under contention, but instead his decision to fire after Decedent hit the ground. As discussed above, officers are justified in firing at a suspect if they reasonably believe suspects are reaching for a weapon. Here, Officer Maldanardo did not have the mere belief that Decedent could be reaching for a weapon, but instead believed he was moving with a weapon in his hand after he had defied officers' warnings to raise his hands. Further, once

he assessed Decedent stopped moving, he did not continue shooting. Thus, Officer Maldanardo's use of force was reasonable under the Fourth Amendment.

### 3. Officer Smith

When Officer Smith observed Decedent holding a revolver and aiming it in Officer Selle's direction, he fired his own weapon at Decedent. (Dkt. No. 52 at ¶ 8.) After Decedent hit the ground, Office Smith "assessed the situation, determined the threat was eliminated, stopped shooting, and backed away." (*Id.*) However, he observed that Decedent still held the gun in his hand. (*Id.*) He also saw that Decedent was not facing Officer Smith and was not moving. (*Id.*)

Officer Smith only fired while Decedent was standing with a firearm raised at an officer. As explained above, Plaintiff does not dispute the reasonableness of the force used before Decedent hit the ground, and precedent clearly establishes that officers can fire at suspects aiming weapons at them. Therefore, Officer Smith's use of force was also reasonable.

### 4. Factual Contentions

Plaintiff does not provide an alternate account of the officers' actions. She does not dispute their testimonies in her responsive pleadings, aside from clarifying that Decedent did not voluntarily choose to get on the ground, as Plaintiff asserts is implied by the wording in Officer Maldanardo's testimony. (Dkt. No. 67 at 5.) Plaintiff, however, does assert inconsistencies between the officers' statements. She points out that Officer Maldanardo testified that Decedent made movements towards the officers once he was on the ground, while Officer Smith decided the threat was eliminated and that Decedent was not moving. (*Id.* at 5.) Plaintiff questions that if Officer Smith could determine that the threat was eliminated why did the other officers keep firing? (*Id.* at 5–6.)

However, Plaintiff fails to note that Officer Selle also observed Decedent moving after he hit the ground. Thus, two of the three officers believed that Decedent continued moving. Additionally, Officer Smith testified that Decedent was still holding his revolver after hitting the ground, and Officer Maldanarado also stated that Decedent had not dropped his weapon. Again, the Fifth Circuit has made clear that the mere act of reaching for a weapon makes an officer shooting reasonable. Here Decedent already had his weapon and had used it.

Further, whether Decedent could actually shoot the officers again is not at issue. "The relevant law, however, does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether "the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others." *Harris v. Serpas*, 745 F.3d 767, 773 (5th Cir. 2014) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011). In *Ballard*, the Fifth Circuit found no Fourth Amendment violation where plaintiff refused to put his rifle down when exiting his vehicle, fired several shots in the air, and pointed his weapon in the general direction of the officers before officers shot him. *Ballard v. Burton*, 444 F.3d 391, 402–03 (5th Cir. 2006). The court found this use of force reasonable, regardless of the direction plaintiff pointed his rifle and whether officers knew the rifle was uncocked and only contained one spent cartridge. *Id.* at 403. The court found these disputed facts immaterial because "a reasonable officer in these circumstances would have reason to believe that [plaintiff] posed a threat of serious harm to himself or to other officers." *Id.* Likewise here, whether Decedent was actually moving at the time of the shots is immaterial when he was still holding his weapon, had defied officers' orders, and had already fired at and shot an officer. Moreover, officers took the time to reassess the situation and no officer initiated a second series of shots. An officer in these circumstances would reasonably believe Decedent posed a threat.

Despite a few inconsistencies in observation, all three officers acted objectively reasonably. *See Royal v. Spragins*, 575 F. App'x 300, 304 (5th Cir. 2014) (finding inconsistencies in officer testimony immaterial in granting the officers summary judgment because the analysis is based in whether an officer was objectively reasonable in his belief of a suspect posing serious harm and no evidence contradicted that the suspect pointed his gun at officers). Thus, Plaintiff has not demonstrated a Fourth Amendment violation and Officer Defendants are entitled to qualified immunity.

Therefore, Plaintiff's claims fail due to abandoned claims, lack of capacity and standing, no municipality liability, qualified immunity, and insufficient constitutional claims.

## VI.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendants' Motions for Summary Judgment (Dkt. Nos. 46, 48, 50, 52) be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections or responses shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 11, 2023.

Sam S. Sheldon
United States Magistrate Judge